

2010 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-2010

# Lin-Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1180

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2010

Recommended Citation

"Lin-Lin v. Atty Gen USA" (2010). *2010 Decisions.* Paper 2072.
http://digitalcommons.law.villanova.edu/thirdcircuit_2010/2072

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2010 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1180

CHANG HAO LIN-LIN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98 715 368)
Immigration Judge: Honorable Alberto J. Riefkohl

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2010

Before: AMBRO, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 13, 2010 )

OPINION

PER CURIAM

Chang Hao Lin-Lin petitions for review of an order of the Board of Immigration

Appeals ("BIA"). For the reasons below, we will deny the petition for review.

Lin-Lin, a native of China, entered the United States in December 2004. He was

charged as removable as an alien who entered without being admitted or paroled. See

Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)].

He conceded removability and applied for asylum, withholding of removal, and relief

under the United Nations Convention Against Torture ("CAT"). Specifically, he argued

that as the spouse of a woman who had been forced to have an IUD inserted and undergo

two abortions, he qualified as a refugee under the Act. Following both abortions, Lin-Lin

became "angry" and "extremely upset," and went to the family planning office to protest.

The first time, Lin-Lin "quarreled" with the family planning authorities. As a result, he

was detained for two days and "beaten up," resulting in leg "injur[ies] and bleeding."

Lin-Lin went to his village doctor, who treated him with medicine. After learning of his

wife's second forced abortion, Lin-Lin returned to the family planning office and was

again "beat[en] . . . up badly." He also had to pay fines totaling 8000 RMB.

The Immigration Judge ("IJ") denied Lin-Lin's applications, concluding that he

was not credible. On appeal, the BIA assumed Lin-Lin was credible, but held that he

could not base his own asylum claim on the forced abortion and contraception of his wife.

The Board further determined that the harm Lin-Lin suffered as a result of other

resistance to China's family planning policies was not so severe as to amount to

persecution under the Act. The BIA also rejected Lin-Lin's claim for withholding and

relief under the CAT. Lin-Lin filed a timely petition for review.

We have jurisdiction pursuant to INA § 242 [8 U.S.C. § 1252]. Because the BIA

2

independently assessed the record, we review only the BIA's final order of removal.  See

Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003).  We use a substantial evidence

standard to review factual findings, Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir.

2003), including findings concerning an applicant's past persecution or "well-founded

fear of future persecution," Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  Under the

substantial evidence standard, findings are upheld "unless the evidence not only supports

a contrary conclusion, but compels it."  Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir.

2001).  We review the BIA's legal conclusions de novo.  See Briseno-Flores v. Att'y

Gen., 492 F.3d 226, 228 (3d Cir. 2007).

An applicant may demonstrate eligibility for asylum by showing either past

persecution or a well-founded fear of future persecution on account of race, religion,

nationality, membership in a particular social group, or political opinion.  See INA

§ 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)].  Significantly, "persecution connotes

extreme behavior, including threats to life, confinement, torture, and economic

restrictions so severe that they constitute a threat to life or freedom."  Ahmed v. Ashcroft,

341 F.3d 214, 217 (3d Cir. 2003) (quotations omitted).  It "does not include all treatment

that our society regards as unfair, unjust, or even unlawful or unconstitutional."  Id.

(quotation omitted).

The spouses of those who have been persecuted by coercive population control

policies are not automatically eligible for asylum.  Lin-Zheng v. Att'y Gen., 557 F.3d 147

3

(3d Cir. 2009) (en banc) (holding that there is no automatic refugee status for spouses of individuals subjected to coercive population control policies). Based on the statutory definition of "refugee" under INA § 101(a)(42) [8 U.S.C. § 1101(a)(42)], we concluded in Lin-Zheng that refugee status extends only to the individual who had been subjected to an involuntary abortion or sterilization procedure, had been persecuted for failing or refusing to undergo such a procedure, or had a well-founded fear of such persecution in the future. See id. at 156. Lin-Lin implicitly acknowledges this, but argues that he established past persecution based on his own resistance to China's family planning policy. See id. at 157 (noting that spouses remain eligible for relief if they qualify as a refugee under § 1101(a)(42) based upon their own persecution, or well-founded fear of persecution, for "other resistance" to a coercive population control program). As evidence of persecution, Lin-Lin points to the fines, detention and beatings, and psychological harm brought on by his wife's abortions and forced contraception.

While Lin-Lin's complaints about his wife's abortions to family planning officials likely constitute "other resistance," the record does not compel a finding that his experiences based on that resistance rise to the level of persecution. Lin-Lin claimed that he paid fines totaling 8000 RMB. He did not allege, however, that those fines were so onerous that they threatened his life or freedom. See Li v. Att'y Gen., 400 F.3d 157, 168 (3d Cir. 2005). Moreover, the short detention and beatings were not sufficiently severe to constitute persecution, particularly when Lin-Lin's injuries required only medicine from

4

the village doctor.  See Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (holding that a single detention and beating requiring a few stitches and leaving a scar was not "severe enough to constitute persecution under our stringent standard").  Lin-Lin also alleged that he was "angry" and "extremely upset" as a result of his wife's forced abortions and contraception.  "[A] finding of past persecution might rest on a showing of psychological harm."  Ouk v. Gonzales, 464 F.3d 108, 111 (1st Cir. 2006).  But, even assuming that a spouse's emotional suffering remains a cognizable basis for asylum following Lin-Zheng, 557 F.3d at 156, we conclude that the record here does not establish that Lin-Lin suffered psychological harm rising to the level of persecution.  See Jiang v. Gonzales, 500 F.3d 137, 141-43 (2d Cir. 2007) (finding no past persecution where forced abortion resulted in illness and diminished health to petitioner's mother, imposing "'anguish' and 'economic loss'" to him).  Additionally, Lin-Lin argued that the BIA failed to consider whether the cumulative effect of his experiences constitute persecution.  We disagree.  The BIA found that Lin-Lin "has not shown that the level of harm that he suffered on account of his 'other resistance,' which consisted of a 2-day detention, a beating that caused bleeding to his legs, and the imposition of a fine, was so severe as to amount to persecution under the Act."

Because Lin-Lin cannot satisfy the asylum standard, he cannot satisfy the more difficult withholding of removal standard.  See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003).  Finally, substantial evidence supports the BIA's conclusion that Lin-Lin

5

failed to demonstrate that it is more likely than not that he would be tortured by the Chinese government, or that the government would consent or acquiesce to his torture.

For the above reasons, we will deny the petition for review.